**McKennon ABRAHAM et al., Plaintiffs,**

v.

**BEATRICE FOODS COMPANY, a Foreign Corporation doing business in Wisconsin, et al., Defendants.**

Civ. A. No. 74–C–249.

United States District Court, E. D. Wisconsin.

Sept. 17, 1976.

Margaret Novak, John F. Ebbott, Milwaukee Legal Services, Inc., Milwaukee, Wis., for plaintiffs.

David J. Cannon, Milwaukee, Wis., for defendants Beatrice Foods Co. & Aunt Nellie's Foods, Inc.

Lowell E. Nass, Asst. Atty. Gen., Madison, Wis., for defendants Wisconsin Dept. of Labor, Lerman, Zinos & Johnson.

John A. Nelson, Asst. U. S. Atty., Milwaukee, Wis., for defendants U. S. Dept. of Labor & Brennan.

## DECISION AND ORDER

REYNOLDS, Chief Judge.

This is an action for declaratory, injunctive and monetary relief brought by a class of migrant agricultural workers. The complaint alleges violations of the Wagner-Peyser Act[1], The Occupational Safety and Health Act,[2] The Fair Labor Standards Act[3], and the Civil War Civil Rights Act[4]. The jurisdiction of this court is invoked pursuant to 28 U.S.C. Secs. 1331, 1337, 1343(3) & (4), it being alleged that more than ten thousand dollars is in controversy. The case is presently before the court on various motions of the defendants. Defendants Beatrice Foods, Inc. and Aunt Nellie's Foods, Inc. have filed motions to dismiss the complaint pursuant to Rule 12(b), Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted[5]. The Wisconsin Department of Industry, Labor and Human Relations ("DILHR"), Philip E. Lerman, John C. Zinos and William A. Johnson ("the State defendants") have filed motions to dismiss under the same rule for failure to state a claim and for lack of personal and subject-matter jurisdiction. For the reasons given below, all of these motions must be denied.

### I.

The complaint alleges that the plaintiffs were recruited for employment at Aunt Nellie's Clymen, Wisconsin canning plant through the Federal Interstate Recruitment System. The system was established pursuant to the Wagner-Peyser Act, 29 U.S.C. Sec. 49 et seq., which provides for grants to the various states to begin and maintain a national system of public employment offices. As a condition for receipt of funds made available under the Act, each participating state must comply with regulations promulgated by the Secretary of Labor.[6]

In order to utilize the free services of the system an employer prepares a "clearance order" for a number of workers, setting forth the rate of pay, hours of work and other terms and conditions of employment. This clearance order is reviewed by the state employment service and a regional office of the Department of Labor. In the case of agricultural workers, the clearance

---

1. 29 U.S.C. Sec. 49, et seq.

2. 29 U.S.C. Sec. 651, et seq.

3. 29 U.S.C. Sec. 201, et seq.

4. 42 U.S.C. Sec. 1981, 1983, and 1994.

5. Defendants Beatrice Foods and Aunt Nellie's have also moved to dismiss on the basis of Rule 23, Federal Rules of Civil Procedure, on the grounds that, as to them, this action is improperly brought as a class action. In reply the plaintiffs conceded that the class allegations are only applicable to the state defendants, but that the allegations of the named plaintiffs are applicable to all defendants. The complaint is amended accordingly.

6. The regulations are set forth in 20 C.F.R. Sec. 602 et seq.

order must meet the standards of 20 C.F.R. Sec. 602.9, which require the state agency, in this case DILHR, to: 1) establish that domestic agricultural workers are not available locally or within the state; 2) ascertain that the wage rates listed are not less than the rate prevailing in the area of employment; 3) compile and examine data on estimated crop acreage, yield and other production factors to verify that the number of workers requested by each participating employer is an accurate reflection of the workers actually needed, and then set a minimum number of agricultural workers required (in accordance with a worker verification process); 5) determine that housing meets the sanitation standards of 20 C.F.R. Sec. 620; 6) ascertain that other terms and conditions of employment are not less favorable than those prevailing in the area.

From the complaint the following facts appear. In March, 1973, Aunt Nellie's, a wholly-owned subsidiary of Beatrice Foods, submitted to the state defendants and to the United States Department of Labor two clearance orders for its canning plant in Clymen, Wisconsin. The state defendants and the Department of Labor approved these orders and transmitted them to labor supply employment service offices without first making the determinations required by 20 C.F.R. Sec. 609. On August 20, 1973, Aunt Nellie's orally informed the state defendants that it had an urgent need for workers, that it was operating two shifts of 12 hours each per day, seven days per week at an hourly rate of $2.00 per hour. This information, which plaintiffs allege to be false, was conveyed to the Louisiana Department of Employment Service which immediately began to advise Louisiana job applicants of these terms of employment. On August 31 Aunt Nellie's was allowed to increase the number of workers on the clearance order to an indefinite number. The state allegedly failed to verify the necessity of this open-ended clearance.

Plaintiffs were recruited in Louisiana pursuant to these clearance orders. They allege that the job offer conveyed to them through the Louisiana Department of Employment Service indicated a provision for housing, the arrangement for transportation, the provision for pay advances, and guarantees of employment for 84 hours per week until December 15, all with a gross income of $202.00 per week. Defendants Aunt Nellie's and Beatrice Foods advanced each worker $10.00 to cover transportation expenses from Louisiana to Wisconsin. Workers thereupon left their homes and traveled to the Clymen plant. Upon arrival, plaintiffs allegedly found the housing inadequate, the work insufficient for all the recruited workers, and the deductions taken from their paychecks for items such as meal tickets so high that they were left with insufficient funds with which to pay their debts and purchase return transportation. The plaintiffs thus contend that they were held in involuntary servitude in that they were forced to stay and work at the plant until they could earn sufficient money to cover both their indebtedness to their employer and their transportation home. The complaint also sets forth causes of action based on intentional over-recruitment, inadequate housing, breach of contract, and excessive deductions from pay.

Plaintiff's complaint against the state defendants is that they failed to meet their obligations under the Wagner-Peyser Act in that they made no attempt to determine whether Aunt Nellie's would comply with the regulations promulgated pursuant to the Act. In turn, Aunt Nellie's and Beatrice Foods are alleged to have intentionally deprived the plaintiffs the protection of the regulations by misleading the state defendants. Finally, the plaintiffs allege that all the defendants act jointly and as part of a conspiracy to deprive the plaintiffs of their rights under the Wagner-Peyser Act and certain civil rights statutes.

## II.

The state defendants have grounded their motion for dismissal on this court's lack of subject matter jurisdiction, arguing that Congress has vested exclusive authority in the United States Secretary of Labor for supervision of state operations under

the Wagner-Peyser Act, that notions of sovereign immunity and the Eleventh Amendment prevent this court from having jurisdiction over the state defendants and the subject matter of the litigation, and that the complaint fails to state a claim upon which relief can be granted.

In opposing defendants' argument that the Secretary of Labor has exclusive authority over the operation of the Wagner-Peyser Act, plaintiffs contend that the Act authorizes an implied federal cause of action by a private party. This precise question was fully addressed in *Gomez v. Florida State Employment Service*, 417 F.2d 569 (5th Cir. 1969). The court in *Gomez* set forth the reasoning this court holds is dispositive of the issue at bar:

"This Act, its setting and the regulations call imperatively for implied remedies here if the purpose of the regulations—the protection of migratory farm workers—is to be achieved. Experience proved the need for more and stringent standards. Standards were stated and stated in terms relating to workers, their pay and conditions of living and transportation. Who, more than the workers, would be the expected beneficiaries of them? What more effective way will there be to eradicate conditions so deplored? . . . What better way will there be to eliminate the problem of poor workers responding to 'Clearance Orders', journeying hundred of miles across the country to accept work and the advantage of the benefits promised by the laws of the United States only to find that the promise is a fraud? Absent an implied remedy, the workers have no protection. They would not have even the protection of a criminal sanction. And, civil suits under local concepts hardly meet these conditions. It is unthinking that Congress, obviously concerned with people, would have left the Secretary with only the sanction of cutting off funds to the state. Moreover, the private civil remedy is a method of policy enforcement long honored explicitly in [the] statutes and by implication with the help of courts. Congress more and more commits to individuals, acting as a private Attorney General, the effectuation of public rights through relief to individuals. See *Pettway v. American Cast Iron Pipe Co.*, 5 Cir., 1969, 411 F.2d 998; *Jenkins v. United Gas Corp.*, 5 Cir., 1968, 400 F.2d 28. (Cases under Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e–3(a))." 417 F.2d at 576.

See also *Galindo v. Del Monte Corporation*, 382 F.Supp. 464 (N.D.Ill.1974). The *Gomez* court went on to hold that suits brought pursuant to 42 U.S.C. Sec. 1983 are appropriate where statutory rights, such as the rights created in the Wagner-Peyser Act, are implicated:

"The aim of the Plaintiffs, through appropriate judicial remedies, is to secure for themselves the fundamentals of human dignity. They seek to protect their right to decent housing and sanitary living conditions so they and their children may be free of disease. They seek to protect their ability to work for the wages which Congress has in effect determined to be the minimum to which they are entitled. They seek sanctions for having been deprived of some of those few protections designed by Congress to lift them out of economic-sociologic peonage. Such fundamental human, highly personalized rights are just the stuff from which § 1983 claims are to be made."

This court fully subscribes to the holding in *Gomez*, both as a matter of precedent and policy.

The bulk of the state's brief is directed in support of its argument that sovereign immunity and the Eleventh Amendment dictate that this action be dismissed. This argument must be rejected.

■ At the outset it should be noted that the plaintiffs in this action seek only declaratory and injunctive relief with regard to the state defendants. Since no monetary damages are sought, many of the arguments advanced by the state defendants here are inapplicable. For example, the state defendants contend that DILHR is not a "person" within the meaning of Sec.

1983, and that the claims against DILHR which are grounded on Sec. 1983 should be dismissed. However, such defendants are "persons" within the meaning of Sec. 1983 when the only relief sought is declaratory or injunctive in nature. See, e. g., *Carpenter v. City of Greenfield School District No. 6*, 358 F.Supp. 220 (E.D.Wis.1973); *Schnell v. City of Chicago*, 407 F.2d 1084 (7th Cir. 1969); *League of Academic Women v. Regents of University of California*, 343 F.Supp. 636 (N.D.Cal.1972) (and cases cited therein).

▮ It is well-settled that the existence of Eleventh Amendment immunity depends on whether the action is against the state, and if so, whether the state has consented to be sued in the federal courts. *Ford Motor Company v. Department of Treasury*, 323 U.S. 459, 462, 65 S.Ct. 347, 89 L.Ed. 389 (1945); see also *Flores v. Norton & Ramsey Lines, Inc.*, 352 F.Supp. 150 (W.D.Tex.1972). Wisconsin law clearly holds that a suit against a state agency or a state officer is a suit against the state itself, *Metzger v. Department of Taxation*, 35 Wis.2d 119, 150 N.W.2d 431 (1967); *Appel v. Halverson*, 50 Wis.2d 230, 184 N.W.2d 99 (1971). The remaining question is whether, under state law, sovereign immunity has been waived and the state has consented to be sued in federal court.

Article IV, Section 27 of the Wisconsin Constitution provides that "The legislature shall direct by law in what manner and in what courts suit may be brought against the state." Pursuant to this provision, Section 101.02(2) of the Wisconsin Statutes states: "(2) The department (of industry, labor and human relations) may sue and be sued."

▮ This court has discovered nothing either in the Wisconsin statutes or the case law which indicates that the consent created in Section 101.02(2) is limited in any way. The court thus concludes that the state has consented to have the defendant agency sued in federal court. Moreover, the doctrine of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) is applicable to allow suit against the state

officers who are named as defendants in this suit. See, *Barry Laboratories, Inc. v. State Board of Pharmacy*, 26 Wis.2d 505, 132 N.W.2d 833 (1965); *Wisconsin Fertilizer Assoc. v. Karns*, 39 Wis.2d 95, 158 N.W.2d 294 (1968). Moreover, although the Supreme Court has recently held that the doctrine of *Ex parte Young* is of no aid to a plaintiff seeking damages from the public treasury, *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), a suit such as the one at bar which involves a prayer for injunctive or declaratory relief is permissible if the plaintiff can show the requisite action (or inaction) on the part of the defendant. *Id.* at 668, 94 S.Ct. 1347. Plaintiffs here have alleged the necessary conduct to survive the motions to dismiss.

▮ Finally, the state defendants have included a motion for dismissal on the ground that the complaint fails to state a claim upon which relief can be granted. No authority or argument has been introduced in support of this contention. In light of the foregoing discussions, it appears from the face of the complaint that this motion is without merit. See *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### III.

▮ Defendants Beatrice Foods and Aunt Nellie's have moved that certain claims of the plaintiffs be dismissed for failure to state a cause of action for which relief can be granted. For these defendants to prevail it must appear "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, supra.

▮ Defendant Beatrice Foods argues that the claims against it should be dismissed entirely since the complaint alleges no connection between it and the plaintiffs other than that Beatrice Foods is the parent corporation of Aunt Nellie's, and that a parent and its subsidiary must be treated as separate entities. A careful reading of the complaint reveals, in paragraph 14, an allegation that at all times relevant to this action defendant Aunt Nellie's and its em-

ployees acted as agents of and in conspiracy with Beatrice Foods. Thus, much more than a simple parent/subsidy relationship is alleged. Moreover, a parent corporation can be held liable for the tort of a subsidiary if it appears that the subsidiary is a "mere instrumentality" of the parent. *American Trading and Production Corporation v. Fischbach & Moore, Inc.*, 311 F.Supp. 412 (N.D.Ill.1971) It is not apparent from the pleadings that Aunt Nellie's is a mere instrumentality of Beatrice Foods. Thus the motion of Beatrice Foods must be denied.

█ Both Beatrice Foods and Aunt Nellie's have also moved to dismiss the plaintiffs' peonage claim. In *Clyatt v. United States*, 197 U.S. 207, 25 S.Ct. 429, 49 L.Ed. 726 (1905) the Supreme Court stated:

> "Peonage, however [defined], is compulsory service, involuntary servitude. The peon can release himself therefrom, it is true, by the payment of the debt, but otherwise the service is enforced. A clear distinction exists between peonage and voluntary performance of labor or rendering of services in payment of a debt. [For] the latter case the debtor, though contracting to pay his indebtedness by labor or service, and subject like any other contractor to an action for damages for breach of that contract, can elect at any time to break it, and no *law or force* compels performance or a continuance of the service. (197 U.S. 215–216, 25 S.Ct. 430) (emphasis added)."

Other cases which have involved peonage claims have stressed the requirement of "law or force" that "compels performance or a continuance of the service." See, e. g., *United States v. Shackney*, 333 F.2d 475 (2d Cir. 1964); *Hodges v. United States*, 203 U.S. 1, 27 S.Ct. 6, 51 L.Ed. 65 (1906); *Pierce v. United States*, 146 F.2d 84 (5th Cir. 1944).

█ Plaintiffs alleged that they were required to indebt themselves to Aunt Nellie's and Beatrice Foods because little or no work was provided them, they had insufficient funds to pay their debts, they asked to be returned to their homes in Louisiana but the defendants refused, and they were therefore forced to stay and work at the plant until they could earn sufficient money to cover their indebtedness. Whether the force alleged in the complaint is sufficient to constitute a claim for peonage need not be decided here; it is enough that plaintiffs have alleged sufficient facts to survive defendants' motion to dismiss.

█ The final argument of Beatrice Foods and Aunt Nellie's is that the claim in the complaint alleging a conspiracy to commit civil rights violations under 42 U.S.C. Sec. 1983 should be dismissed because Sec. 1983 does not countenance a course of action for conspiracy. As noted in *Gomez v. Florida State Employment Service*, supra, this argument has little merit:

> "It warrants emphasis again that the use of the magic word 'conspiracy' does not necessarily take it out of § 1983 and throw it into § 1985. On usual principles of agency persons may be held accountable for the acts of others under § 1983. Most times such a combination, concerted action, etc. would constitute 'conspiracy', too." 417 F.2d at 578, f.n. 34.

*See also Adickes v. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Therefore, this motion, too, must be denied.

### IV.

█ According to paragraph 6 of plaintiffs' complaint, plaintiffs wish to bring this action on their own behalf and on behalf of a class "consisting of all migrant agricultural workers recruited to work in Wisconsin through the Rural Manpower Service operated by the defendant United States Department of Labor and its participating state agencies." The commercial defendants, Beatrice Foods and Aunt Nellie's have objected to such a certification as inapplicable to them. Plaintiffs have conceded in a brief and in open court that the class action is for purposes of injunctive and declaratory relief against the governmental defendants only, and do not challenge the commer-

cial defendants' assertion that the class allegation is inapplicable as to them.

The court is satisfied that the proposed plaintiffs' class satisfies the requirements of Rule 23(b)(2), F.R.Civ.P. The class is so numerous that joinder of all its members is impracticable. Plaintiffs assert that there are approximately 4,000 migrant agricultural workers recruited through the Rural Manpower Services during any given crop season, and that migrant agricultural workers are constantly changing locations of employment and entering and leaving the migrant stream. There are questions of law and fact common to the class. For example, all such migrant agricultural workers are subject to the same policies and practices maintained by defendant participants in the Rural Manpower Service. The court is satisfied that the claims of the named plaintiffs are typical of the claims of the class and that the named plaintiffs will fairly and adequately protect the interests of the class. The governmental defendants have allegedly acted and refused to act on grounds generally applicable to the class, thus the issue of the appropriateness of injunctive and declaratory relief with respect to the class as a whole must be decided. Plaintiffs are represented by a legal services agency which has already voluminously briefed the court on the above motions and can be expected to adequately protect the interests of the class.

IT IS THEREFORE ORDERED that the motions to dismiss of the defendants all be and hereby are denied.

IT IS FURTHER ORDERED that the present action be maintained as a Rule 23(b)(2) class action on behalf of a class consisting of all migrant agricultural workers recruited to work in Wisconsin through the Rural Manpower Service operated by the defendant United States Department of Labor and its participating state agencies, as to injunctive and declaratory relief sought against the governmental defendants.