**NAACP, JEFFERSON COUNTY BRANCH, et al., Plaintiffs,**

**v.**

**The Honorable Ann McLAUGHLIN, Secretary, United States Department of Labor, in her official capacity, et al., Defendants.**

**Civ. A. No. 82–2315.**

United States District Court, District of Columbia.

Jan. 17, 1989.

See also 619 F.Supp. 846.

Roger C. Rosenthal and Edward Tudden-ham of the Migrant Legal Action Program, Washington, D.C. and Garry G. Geffert of the West Virginia Legal Services Plan, Inc., Martinsburg, W. Va., for plaintiffs.

Timothy J. Reardon, John D. Bates, R. Craig Lawrence, and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., for defendants.

CHARLES R. RICHEY, District Judge.

## INTRODUCTION

The history of this long-lived case began in 1982 when plaintiffs, a nationwide class of United States migrant farm workers, filed suit against the Department of Labor ("DOL") pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq. (1982) and its implementing regulations challenging the procedures the DOL used to certify that the employment of temporary aliens in the United States would not "adversely effect" the wages and working conditions of similarly situated United States workers.

This Court, in a series of decisions,[1] concluded that the DOL was violating the implementing regulations of the Immigration and Nationality Act by granting temporary labor certification to employers who failed to increase their piece rates so as to provide United States migrant farm workers with wages consistent with the adverse effect rate, the minimum wage that an employer must pay United States workers before it can be certified to employ temporary foreign workers.[2] As such, this Court enjoined the DOL from granting temporary labor certification to any employer failing to pay United States workers wages that were in accordance with the rate, as calculated pursuant to *NAACP I*.[3] *See NAACP, Jefferson County Branch v. Donovan* *("NAACP II")*, 566 F.Supp. 1202, 1210 (D.D.C.1983).

Now before the Court is plaintiffs' motion requesting the Court's issuance of an Order directing the DOL to Show Cause

1. The Court's pivotal decision interpreting the DOL regulations governing labor certification is *NAACP, Jefferson County Branch v. Donovan* *("NAACP I")*, 558 F.Supp. 218 (D.D.C.1982). The Court's subsequent decisions either enforce or expand this Court's decision in *NAACP I*. For a good summary of much of the history of this case after *NAACP I*, see *NAACP, Jefferson County Branch v. Donovan*, 737 F.2d 67 (D.C.Cir.1984).

2. The DOL regulations governing the adverse effect rate can be found at 20 C.F.R. § 655.207(c) (1987).

3. The provision of the Court's Order enjoining defendants is Paragraph 8; that paragraph provides:
   ORDERED that defendants are enjoined from granting temporary labor certification to any employer that fails to adjust its piece rate so that an employee, working at the same productivity rate required to earn the then-applicable AER in 1977 or the year in which the employer first applied for temporary labor certification, whichever year is later, may earn the current AER.
   *NAACP, Jefferson County Branch v. Donovan*, 566 F.Supp. 1202, 1203 (D.D.C.1983).

why it should not be adjudged in contempt for granting labor certification to twenty-four Virginia apple growers who paid pickers wages below the proper adverse effect rate for the 1986 season. Upon careful consideration of plaintiffs' motion, the supporting and opposing legal memoranda, and the underlying law, the Court will deny plaintiffs' motion seeking an order directing the DOL to show cause, because the Court finds that the DOL made a good faith effort to comply with this Court's Order.

Also before the Court is a request in plaintiffs' reply memorandum that the Court enter a remedial order should it find that contempt is an inappropriate sanction at this juncture. Specifically, plaintiffs seek an order directing the DOL to deny labor certification to the Virginia growers, who paid wages below the proper adverse effect rate for 1986, until they provide restitution. Although plaintiffs did not file a formal motion seeking such a remedial order, the Court will treat plaintiffs' request as a motion since both parties fully briefed this question. The Court will, however, deny plaintiffs' request for a remedial order because the issuance of such an order would encroach upon the DOL's discretion to enforce its regulations.

## BACKGROUND

During the 1986 harvest, the DOL received numerous proposals from growers to convert from piece rates to hourly rates or hourly rates plus production bonus compensation schemes. Although the DOL had no objection to the adoption of new payment schemes by growers, the DOL did maintain a policy of only endorsing those payment schemes that produced wages that were commensurate with those required under *NAACP I* and *NAACP II.*

In June, 1986, twenty-four apple growers in Virginia and West Virginia filed clearance orders with the DOL offering to pay their temporary "H–2" workers at an hour-

ly rate plus a discretionary, unspecified bonus. The DOL denied these clearance orders because it was uncertain whether this proposed payment scheme would comply with DOL regulations as interpreted by this Court in *NAACP I* and *NAACP II.*

In response to DOL's denial of their clearance orders, the Virginia growers filed suit in the United States District Court for the Western District of Virginia seeking to enjoin the DOL from rejecting their applications on the basis of the language permitting discretionary bonuses. The United States District Court for the Western District of Virginia issued two orders granting the growers' request for injunctive relief. *See C.L. Robinson v. U.S. Dep't of Labor,* No. 86–0417–R (W.D.Va. Aug. 7, 1986); *Sensey South Corp. v. U.S. Dep't of Labor,* No. 86–458 (W.D.Va. Aug. 27, 1986). Pursuant to these orders, the DOL granted these twenty-four growers in Virginia labor certification for the 1986 harvest.

From information they gathered after the 1986 harvest was over, counsel for plaintiffs concluded that the discretionary bonuses offered by east coast growers in 1986 were nothing more than disguised piece rates that were well below the rate required under *NAACP I* and *NAACP II.* Plaintiffs' counsel wrote counsel for the DOL letters that outlined plaintiffs' allegations of unlawful wage payments and requested that the DOL take specific remedial action against the growers, including sanctions under 20 C.F.R. § 655.210(a) (1987).[4]

The letters from plaintiffs' counsel prompted the DOL's Regional Administrators in Virginia, West Virginia, Maryland, New York, and New England to examine 1986 job orders and, in some instances, payroll records for east coast growers to determine whether these growers complied with the DOL's piece rate adjustment regulations. The Regional Administrators concluded that, with the exception of growers in Virginia and West Virginia, the majority

---

**4.** If a Regional Administrator has probable cause to believe that an employer failed to live up to the terms of the temporary labor certification, the Regional Administrator must undertake an investigation. After the investigation, the Regional Administrator may notify an employer failing to comply with the terms of temporary labor certification that it will be ineligible for labor certification in the following year. *See* 20 C.F.R. § 210(a) (1987).

of growers on the east coast paid wages at levels that were in compliance with this Court's Order.

Although the DOL concluded that the wages paid by Virginia and West Virginia growers were in clear violation of the terms of their temporary labor certification, the DOL decided not to exercise its discretion to sanction these growers because of "extenuating circumstances surrounding the 1986 season." These circumstances included the DOL's approval of one grower's hourly rate plus production bonus payment scheme in 1985 and the absence of a clearly defined DOL policy on hourly rate plus production bonus payment schemes.

## I.

THE COURT WILL DENY PLAINTIFFS' MOTION FOR AN ORDER TO SHOW CAUSE WHY DOL SHOULD NOT BE ADJUDGED IN CONTEMPT BECAUSE THE COURT FINDS THAT THE DOL MADE A GOOD FAITH EFFORT TO COMPLY WITH THE ORDERS OF THIS COURT

■ It is a well-established that once a court with jurisdiction issues an injunction, those bound by the injunction must obey it until the court modifies or reverses the injunction, even if those bound believe the Court erred in issuing the injunction. *See GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.,* 445 U.S. 375, 386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980). Because the Court has in no way altered Paragraph 8 of its Order in *NAACP II,* there is no question that the DOL is still enjoined from granting temporary labor certification to any employer who fails to pay wages in accordance with the proper rate. The question the Court must decide is whether it should exercise its inherent power to enforce its orders through civil contempt sanctions in light of the DOL's decision to grant temporary labor certification to Virginia growers despite their failure to pay the proper rate.

■ In deciding whether it would be appropriate to hold the DOL in civil contempt, the Court must engage in a two-step analysis. First, the Court must examine its Order to determine whether its language was

sufficiently specific so as to put the DOL on fair notice of the precise conduct enjoined. *See, e.g., Schmidt v. Lessard,* 414 U.S. 473, 476, 94 S.Ct. 713, 715, 38 L.Ed.2d 661 (1974); *Common Cause v. Nuclear Regulatory Commission,* 674 F.2d 921, 927 (D.C.Cir.1982); *see generally,* C. Wright & A. Miller, *Federal Practice and Procedure* § 2955. Second, the Court must consider whether there are any mitigating factors that hindered the DOL's compliance with the Order of this Court. This Circuit recognizes that "good faith efforts or a party's inability to comply with a court's orders [may serve as] defenses that call for mitigation of contempt sanctions." *NAACP, Jefferson County Branch v. Brock,* 619 F.Supp. 846, 850 (D.D.C.1985) (citing *SEC v. Ormont Drug and Chem. Co.,* 739 F.2d 654, 656–57 (D.C. Cir.1984); *WMATA v. Amalgamated Transit Union Local Division 689,* 531 F.2d 617, 621 (D.C.Cir.1976); *Natural Resources Defense Counsel, Inc. v. Train,* 510 F.2d 692, 713 (D.C.Cir.1975); *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & A.R., Co.,* 380 F.2d 570, 581 (D.C.Cir.), *cert. denied,* 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967)).

■ The language of Paragraph 8 of this Court's Order in *NAACP II* is unmistakably clear. *See NAACP II,* 566 F.Supp. at 1210. The Order, in unequivocal language, prohibits the DOL from granting temporary labor certification to growers who are not paying United States workers wages at the proper rate. The DOL does not dispute the clarity of the Court's Order. Accordingly, there is no question that the DOL violated the Order when it granted temporary labor certification to the Virginia growers in 1986.

The question that remains is whether the DOL made a good faith effort to comply with the Court's Order even though it was not successful in so doing. In evaluating the DOL's good faith, the Court must balance the DOL's rights against the need to prevent the DOL "from flouting the law." *Maggio v. Zeitz,* 333 U.S. 56, 77, 68 S.Ct. 401, 412, 92 L.Ed. 476 (1948).

The Court concludes that the DOL found itself in a "Catch–22" situation when it tried to adhere to the terms of this Court's

Order in *NAACP II* because the orders entered by the United States District Court for the Western District of Virginia presented the DOL with irreconcilable obligations. The DOL denied the Virginia growers certification because it was not convinced that the new wage scheme proposed by the Virginia growers would comply with the Order of this Court. The Virginia growers then obtained two orders from a federal district court in Virginia enjoining the DOL from denying the Virginia growers temporary labor certification on the basis of the growers' new wage scheme, despite the DOL's reservations concerning the new scheme's compliance with the Order of this Court. The DOL was in the unenviable position of deciding which order to follow; either way, the DOL risked being held in contempt for violating a court order. The DOL's initial denial of temporary labor certification to these Virginia growers coupled with the fact that the DOL was bound by conflicting injunctions of courts in two Circuits [5] are mitigating factors that excuse the DOL's violation of this Court's Order. There is no evidence in the record before the Court that the DOL did not act in good faith. Accordingly, the Court will deny plaintiffs' motion that the Court issue a show cause order directing the DOL to demonstrate why it should not be held in contempt.[6]

## II.

## THE COURT LACKS A JURISDICTIONAL BASIS TO ISSUE THE REMEDIAL ORDER THAT PLAINTIFFS REQUESTED.

Plaintiffs base their request for an Order directing the DOL to provide plaintiffs with relief on two alternative theories. The first is that the DOL's obligation to provide plaintiffs with relief is governed by the regulations governing the job service complaint system [7] rather than the regulations governing the labor certification process for the temporary employment of aliens in the United States.[8] Plaintiffs base this conclusion on the fact that the DOL's investigation was prompted by letters received from plaintiffs' counsel. Assuming that plaintiff is correct, the DOL is obligated under the regulations to deny the Virginia growers temporary labor certification until they either make restitution for the deficiency in the wages they paid plaintiffs in 1986 or take other appropriate remedial action. 20 C.F.R. § 658.502(a)(5) (1987). Alternatively, plaintiffs argue, assuming the Court finds that the DOL's obligation to provide plaintiffs' relief is governed by the regulations governing the temporary employment of aliens in the United States, that it would be arbitrary and capricious and, therefore, a violation of the Administrative Procedure Act, for DOL to deny plaintiffs' relief.[9] The Court will address each of plaintiffs' arguments in turn.

■ The fact that the DOL's investigation of the wages paid by the Virginia growers during the 1986 season was prompted by letters that the DOL received from plaintiffs' counsel does not mean that the job service regulations were triggered. The job service regulations are usually initiated by a complainant filing a complaint with a state or local job service complaint agency. 20 C.F.R. § 658.410 (1987). Only

---

5. *Compare NAACP, Jefferson County Branch v. Donovan*, 566 F.Supp. 1202, 1210 (D.D.C.1983) *with C.L. Robinson v. U.S. Dep't of Labor*, No. 86–0417–R (W.D.Va. Aug 7, 1986); *Sensey South Corp. v. U.S. Dep't of Labor*, No. 86–458 (W.D.Va. Aug. 27, 1986).

6. If anyone is guilty of bad faith, it is the growers. It is hard to believe that the growers did not consciously make a tactical decision to file for injunctive relief enjoining the DOL from denying them temporary labor certification on the basis of their new wage schemes in federal district court in Virginia rather than in this Court. If the growers had filed suit in this

Court instead, they knew their request for injunctive relief would be denied absent a showing that their new wage scheme complied with this Court's Order in *NAACP II.* By filing in Virginia, the growers were able to circumvent that Order.

7. *See* 20 C.F.R. § 658 *et seq.* (1987).

8. Plaintiffs' Reply Brief in Support of Their Application for an Order to Show Cause ("Plaintiffs' Reply") at 13.

9. *See* Plaintiffs' Reply at 12.

in exceptional cases do the job service regulations allow Regional Administrators to process job service complaints prior to a complainant's exhaustion of his or her administrative remedies at the state or local level. *Id.* at §§ 658.421(a); 658.423.

The letters that plaintiffs' counsel wrote to counsel for the DOL did not mention that plaintiffs wished to file a job service complaint with DOL Regional Administrators because plaintiffs had already exhausted their administrative remedies at the state or local level. Moreover, the letters did not ask whether plaintiffs could bypass the exhaustion requirement. In short, the letters made no reference to the job service complaint system. As such, the Court finds that the letters written by plaintiffs' counsel did not bring the Job Service regulations into play.[10] Accordingly, the Court will deny plaintiffs' request for relief under the job service complaint regulations.

The Court does find, however, that the letters did provide the DOL Regional Administrators with probable cause to believe that certain employers violated the terms of their temporary labor certification. As such, the Regional Administrators were obligated to investigate whether these employers did in fact violate the terms of their certification. 20 C.F.R. § 655.210(a) (1987). Plaintiffs do not dispute the Regional Administrators' fulfillment of their obligation to conduct such an investigation. The bone of contention is over whether Regional Administrators are obligated to impose a sanction once they conclude that an employer has not complied with the terms of its labor certification.

█ The language of the regulation governing sanctions provides that a Regional Administrator, concluding that an employer has failed to comply with the terms of its labor certification, *"may* notify the employ-

er that it will not be eligible to apply for a temporary labor certification in the coming year (emphasis added)." 20 C.F.R. § 655.210(a) (1987). The regulation's use of the word "may" rather than "shall" makes the imposition of sanctions on an employer permissive rather than mandatory. The language of the regulation enumerates no factors that the Special Administrator should consider in deciding whether to sanction an employer who was found to have acted in violation of the terms of its temporary labor certification. As such, the decision to sanction an employer is purely discretionary.

█ Before the Court can even evaluate plaintiffs' contention that the Special Administrator's decision not to impose sanctions against the growers was arbitrary and capricious and an abuse of discretion, the Court must first be convinced that this decision is susceptible of judicial review. Under the Administrative Procedure Act, judicial review of agency decisions is improper when Congress has "affirmatively precluded judicial review" or when there is no "meaningful" legal standard against which a court can evaluate the decision's validity. *Heckler v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985). The first exception to judicial review under the APA, affirmative preclusion by Congress, expressly comes from 5 U.S. C. § 701(a)(1); the second, lack of judicially manageable standards, originates out of § 701(a)(2).[11] *Id.* at 828, 105 S.Ct. at 1654. Congress has not affirmatively precluded the Court from evaluating whether DOL Special Administrators have properly declined to impose sanctions; as such, the only barrier to judicial review of the Special Administrator's decision is the absence of judicially manageable standards to conduct such a review.

10. The Court notes that its conclusion that plaintiffs did not invoke the job service regulations has no bearing on plaintiffs' ability to file a job service complaint in the future as long as the complaint is in compliance with the requirements of the regulations of the Job Service Complaint System.

11. 5 U.S.C. § 701(a) provides:
    This chapter applies according to the provisions thereof, except to the extent that—
    (1) statutes preclude judicial review; or
    (2) agency action is committed to agency discretion by law.

In *Heckler v. Chaney, supra,* the Supreme Court held that "an agency's decision not to take enforcement action should be presumed immune from judicial review under § 701(a)(2)." 470 U.S. at 832, 105 S.Ct. at 1656. At the core of this presumption is the usual unavailability of judicially manageable standards to evaluate an agency's decision to prosecute or to enforce its own regulations. *Id.* at 830-32, 105 S.Ct. at 1655-56. This presumption against judicial review of agency decisions to enforce its regulations can only be rebutted where the substantive statute or its implementing regulations provide "guidelines for the agency to follow in exercising its enforcement power." *Id.* at 832-33, 105 S.Ct. at 1656.

The presumption against judicial review of the Special Administrator's decision not to impose sanctions is not rebutted. Neither the Immigration and Nationality Act nor its implementing regulations provide the DOL with any guidelines to consider in deciding whether to sanction an employer's violation of the terms of its labor certification. Accordingly, the Court must also deny plaintiffs' request for a remedial order pursuant to the regulations governing the labor certification process for the temporary employment of aliens in the United States. This is because there is no judicially manageable standard by which the Court can evaluate the DOL's decision not to sanction the Virginia growers who violated the terms of their labor certification in 1986.

## CONCLUSION

For the reasons already enumerated herein, the application for the issuance of an Order to Show Cause will not be issued, but this does not mean in any way that the Department of Labor has clean hands, in a practical sense. The Department of Labor has been the subject of a multitude of proceedings in this Court going back to *NAACP, Western Region v. Hodgson,* 57 F.R.D. 81 (D.D.C.1972), *NAACP, Western Region v. Brennan,* 360 F.Supp. 1006 (D.D.C.1973), and its progeny, wherein the bureaucracy has resisted and resisted, to put it mildly, herculean efforts to get it to enforce laws under its jurisdiction pertaining to medical care, sanitary working conditions, and housing for our nation's migratory farm workers who have no real world sponsors of their plight and go unnoticed except for an occasional news story, and even these are few and far between.

The Department of Labor has also been dragged into this Court on numerous occasions because of its noncompliance with Orders of this Court dealing with the employers of migrants in terms of their entitlement to back pay for at least two years (1983 and 1985) as more fully described in another Opinion which this Court also issued today. *See Frederick County Fruit Growers Ass'n, Inc. v. William E. Brock, et al.,* 703 F.Supp. 1021 (D.D.C.1989).

The Court will issue an Order of even date herewith memorializing these findings.

## ORDER

In accordance with the Court's Opinion of even date herewith, it is, by the Court, this 14th day of January, 1989,

ORDERED that the plaintiffs' motion requesting the Court's issuance of an Order directing the Department of Labor to Show Cause why it should not be held in civil contempt shall be, and hereby is, denied; and it is

FURTHER ORDERED that the plaintiffs' motion for the Court's issuance of a remedial order shall be, and hereby is, denied.