NAACP, JEFFERSON COUNTY
BRANCH, et al., Plaintiffs,

v.

The Honorable William E. BROCK, Secretary, United States Department of Labor, in His Official Capacity, et al., Defendants.

Civ. A. No. 82–2315.

United States District Court,
District of Columbia.

Oct. 10, 1985.

Thomas D. Goldberg, Ronald A. Stern, and Phillip A. Lacovara, of Hughes, Hubbard & Reed, Washington, D.C., for plaintiffs.

Harry L. Sheinfeld, Counsel for Litigation, U.S. Dept. of Labor, and Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., and Royce C. Lamberth, Asst. U.S. Atty., and R. Craig Lawrence, Asst. U.S. Atty., Washington, D.C., for defendants; William H. DuRoss, III, Associate Sol. for Employment and Training, and Jeffrey A. Hennemuth, Atty., Office of the Sol., U.S. Dept. of Labor, Washington, D.C., of counsel.

## OPINION

CHARLES R. RICHEY, District Judge.

### INTRODUCTION

The Court has before it plaintiffs' application for two show cause orders, the accompanying memoranda in support of the application, and the defendant, Department of Labor's (DOL) opposition thereto. Although the Court signed a final order in this longstanding case on August 15, 1985, recent actions by two non-party West Virginia apple growers and suits filed in the District Court for the Northern District of West Virginia have precipitated plaintiffs' applications. *Tri-County Growers, Inc. v. Brock*, Civ. No. 85–38–M; *Homer Feller, d/b/a Mount Level Orchards and Farms*, Civ. No. 85–37–M.

### BACKGROUND AND FACTS

Plaintiffs are a nationwide class of migrant farm workers,[1] who initially filed suit against the Secretary of Labor and the DOL, claiming that the DOL had violated its own regulations which governed the labor certification process for the temporary employment of aliens in the United States. Plaintiffs argued that the DOL had not required certain West Virginia apple growers to increase their piece rates (amount paid per box of apples picked) to match the adverse effect rate (AER is the minimum wage that employers must pay both foreign and domestic workers). By not raising piece rates, the growers forced the farm workers to increase their productivity in order to earn the AER. Furthermore, plaintiffs asserted that the DOL had not established an AER for West Virginia in 1982.

> *Branch v. Donovan*, 558 F.Supp. 218, 220 (D.D. C.1982).
>
> In the second phase of the litigation, thirteen more individual plaintiffs from nine other states and a farmworkers organization joined the original plaintiffs. The United States was joined as a defendant to ensure the availability of the relief requested. *NAACP, Jefferson County Branch v. Donovan*, 566 F.Supp. 1202, 1204–05 (D.D.C.1983).

---

**1.** The certified class in the original suit filed in this Court consisted of the NAACP, a number of named plaintiffs, all farmworkers employed by Ewer Orchards, Mount Level Orchards, and Tri-County Growers at any time during the harvesting seasons of 1980 and 1981, and all United States farmworkers who "intend to seek or are seeking employment in West Virginia for the 1982 harvest season" and whose working conditions or wages were affected adversely by the defendants' actions. *NAACP, Jefferson County*

In September, 1982, this Court granted summary judgment for the plaintiffs and enjoined the defendants from granting temporary labor certification to growers who did not offer the proper piece rate based on the AER and the standard productivity rate of 80 bushels a day. Defendants also were ordered to use rulemaking procedures to establish the 1982 AERs for certain states. *NAACP, Jefferson County Branch, v. Donovan (NAACP I)*, 558 F.Supp. 218, 225–26 (D.D.C.1982). In 1983, the DOL published a final rule, which utilized a new methodology for determining the AERs. In subsequent litigation, the Court, again granted summary judgment for the plaintiffs and ordered the DOL to establish piece rates in West Virginia in conformance with its new AER methodology. The Court further ordered that the defendants gather information and publish a rule for determining the AER in *all affected* states. Finally, the Court enjoined defendants from granting temporary labor certification to any employer who did not comply with the adjusted piece rate. *NAACP, Jefferson County Branch, v. Donovan (NAACP II)*, 566 F.Supp. 1202, 1209–10 (D.D.C.1983).

The DOL published its final rule amending 20 C.F.R. § 655.207(c) on September 2, 1985. However, this Court, in accordance with a mandate from the Court of Appeals, entered its final order and judgment vacating the amendments and reinstating 20 C.F.R. § 655.207(c) (1978) as published on March 10, 1978, and as interpreted by the Court in *NAACP I* and *NAACP II*, until amended or revoked by proper rulemaking procedures. *NAACP, Jefferson County Branch, v. Brock*, No. 82–2315 (D.D.C. Aug. 14, 1985) (final order and judgment).

Two weeks after the entry of the Final Order and Judgment, on the eve of the apple harvesting season, two West Virginia apple growers, Tri-County Growers, Inc., and Mount Level Orchards and Farms,

filed suit in the Northern District of West Virginia seeking an order reversing the DOL's denial of labor certifications for temporary farm workers due to the growers' refusal to pay workers the fifty-two cents per box piece rate. The growers also applied for a temporary restraining order enjoining the DOL's denial of labor certification of nearly 600 temporary foreign workers. Despite the DOL's argument that if the TRO were granted, it would be faced with conflicting orders from two different district courts, the West Virginia court granted the growers' TRO on the condition that the growers either deposit the difference between the piece rate paid and the piece rate required under the DOL regulations or provide irrevocable bank letters of credit to secure the eleven cents-per-box difference between the required rate and that actually paid by the growers.

The DOL subsequently filed a motion for stay of the district court's order with the Fourth Circuit Court of Appeals. After argument before a single judge of the Fourth Circuit, the motion was denied. The DOL did not seek further review of the orders either by a full panel of the Fourth Circuit or by application to a Supreme Court Justice. The next day, the DOL complied with the West Virginia district court's order by granting certification to the two plaintiff-growers even though their piece rates were well below the published standard.[2] The District Court for the Northern District of West Virginia has scheduled a hearing on the merits for early October.

Plaintiffs are now back before this Court requesting that it issue two orders to show cause. One would order the DOL to show cause why it should not be held in civil contempt of court for its failure to follow this Court's orders. Should a finding of contempt be made, plaintiffs ask that defendants be required to pay a fine to reim-

**2.** Tri-County and Mount Level offered workers forty-one cents per box of applies picked. Plaintiffs' Memorandum in Support of their Application for Orders to Show Cause at 5; *NAACP, Jefferson County Branch v. Brock*, Civ. No. 82–2315 (D.D.C. filed Sept. 10, 1985); *see*

Complaint of Plaintiff at 8, *Feller v. Brock*, Civ. No. 85–37–M (N.D.W.Va. filed Aug. 27, 1985); Complaint of Plaintiff at 8, *Tri-County Growers, Inc. v. Brock*, Civ. No. 85–38–M (N.D.W.Va. filed Aug. 27, 1985).

burse plaintiffs for their lost wages. The other order desired by plaintiffs is directed at the West Virginia growers, Tri-County and Mount Level, to show cause why they should not be directed to raise their piece rates immediately to the fifty-two cents per box rate, and further, enjoined from prosecuting their actions in the Northern District of West Virginia.

After consideration of the briefs submitted by counsel and oral argument before it, the Court finds that for the reasons stated herein, both Applications for Orders to Show Cause shall be denied.

## ANALYSIS

*The DOL attempted to comply in good faith with this Court's Orders in NAACP-II, and therefore, is not in contempt.*

It is an established principle of law that once a court issues an injunction, those persons who are subject to it are to obey the terms of that order as long as it remains in effect. Even proper objections to the injunctive order do not provide sufficient grounds for disobeying it. *GTE Sylvania, Inc. v. Consumers Union*, 445 U.S. 375, 386, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980). Paragraph eight of this Court's Order in *NAACP II* enjoined the DOL from granting temporary labor certification to *any employer* who did not comply with the applicable piece rate standard. The purpose of this Order was to enable workers to earn the current AER without having to increase their productivity rate. *NAACP II*, 566 F.Supp. at 1210. The Court, after issuing this lawful order, has the inherent power to enforce compliance through civil contempt sanctions. *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 1535, 16 L.Ed.2d 622 (1966).

Before issuing the civil sanctions that plaintiffs have requested, the court must conduct a three-step analysis. First, it must decide if the orders were specific enough to create a "predicate for contempt." *Aero Corp. v. Department of the Navy*, 558 F.Supp. 404, 418 (D.D.C.1983).

Second, if the terms establish the requisite predicate, the Court must consider whether in light of the evidence and any mitigating factors now before it, the DOL can be held in civil contempt for its disobedience. Third, if the DOL is in contempt, then the Court must determine whether the defendants come within the ambit of the sovereign immunity doctrine and, as a consequence, are immune from the civil contempt sanction of paying the compensatory fine. In brief, the Court finds that the terms of its June 28, 1983, Order in *NAACP II* are sufficiently specific so that the DOL was well aware of what actions it was expected to take and which others the Order proscribed. Moreover, the DOL's actions to date constitute good faith efforts on its part to comply with the Court's Order. Because of this finding of good faith, the DOL is adjudged to not be in contempt of court. Consequently, it is unnecessary to decide whether the Court has the power to order the DOL to pay a compensatory fine.

The Court's Order of June 28, 1983, is specific enough to form the necessary predicate for contempt. In that document, the Court sets forth its orders in eight separate paragraphs. The eighth paragraph is of specific concern in this case. Its terms, as indicated above, clearly spell out what actions the defendants are enjoined from taking. Within the paragraph the Court details what the employer-growers must do to comply with the DOL regulation and which productivity rates the DOL should apply to determine the appropriate piece rate. One can draw but a single conclusion from this paragraph: the DOL cannot grant temporary labor certification if the applicant is not paying the proper piece rate.

Having established that the Order contains the requisite specificity, the Court must focus on whether the DOL should be held in contempt for disobeying that Order. Here plaintiffs seek civil rather than criminal contempt sanctions. The differences in burden of proof and factors for the Court to consider are well documented in the case law. *See, e.g., NLRB v. Blevins Popcorn*

*Co.*, 659 F.2d 1173, 1183–87 (D.C.Cir.1981); *see also* 11 C. Wright & A. Miller *Federal Practice and Procedure* § 2960 (1973). In civil contemnor, the moving party has. the burden of proving that the alleged contemnor has violated the Court's Order by clear and convincing evidence. *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Post Co.*, 626 F.2d 1029, 1031 (D.C.Cir.1980). The violation need not be intentional or willful; in fact, "the intent of the recalcitrant party is irrelevant." *Blevins Popcorn Co.*, 659 F.2d at 1184; *see also* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2960 (1973). However, the courts of this circuit have considered good faith compliance efforts or a party's inability to comply with a court's orders as defenses which call for mitigation of contempt sanctions. *See SEC v. Ormont Drug & Chem. Co.*, 739 F.2d 654, 656–57 (D.C.Cir.1984); *WMATA v. Amalgamated Transit Union Local Division 689*, 531 F.2d 617, 621 (D.C.Cir. 1976); *Natural Resources Defense Counsel, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir.1975); *Brotherhood of Locomotive Firemen & Enginemen v. Bangor & A.R. Co.*, 380 F.2d 570, 581 (D.C.Cir.), *cert. denied*, 389 U.S. 327, 88 S.Ct. 437, 19 L.Ed.2d 560 (1967).

■ There is no question but that the DOL's granting of temporary labor certification to Tri-County and Mount Level violates this Court's Order. The issues that remain are whether the DOL has made good faith efforts to comply or whether they were unable to comply with the *NAACP II* Order. The Court notes that under a good faith analysis is one which calls for the Court to balance the violating party's rights with the need to prevent that party from "flouting the law." *Maggio v. Zeitz*, 333 U.S. 56, 77, 68 S.Ct. 401, 412, 92 L.Ed. 476 (1948). Thus, "some attempts"

at compliance are not enough to pass the close scrutiny of the alleged contemnor's claims. *Ormont Drug & Chem. Co.*, 739 F.2d at 656; *Brotherhood of Locomotive Firemen & Enginemen*, 380 F.2d at 582.

The DOL finds itself in an unenviable position, resting on the horns of a dilemma. Plaintiffs argue that the DOL could have done more to remove itself from this predicament. They point out that the DOL could have chosen to comply with this Court's Order, and thus violate the Order of the West Virginia district court, or the DOL could have sought further review before a full panel of Fourth Circuit judges or a Supreme Court justice. The first choice, while it may be supported by the *Sylvania* decision, does not eliminate the possibility of the DOL facing contempt charges and sanctions in the Northern District of West Virginia. In fact, the DOL attorneys presented the *Sylvania* argument to both courts in West Virginia, but obviously neither found it persuasive. The second choice was one that the DOL attorneys considered but decided against in light of the expedited hearing on the merits and the conditions they were able to convince the Court to attach to the TRO.[3] Certainly, the fact that the DOL had a choice at all precludes this Court from finding that they were "powerless to comply" with its Order. *Ormont Drug & Chem. Co.*, 739 F.2d at 656. But, the DOL did make substantial efforts to ensure that its regulations would be followed, and that the workers rights pursuant to those regulations would be protected *as much as possible* under the circumstances.[4] The provisions of the West Virginia court's Order requiring the growers to establish an escrow account or provide irrevocable letters of credit are the direct result of the DOL's arguments before that court. Throughout the litigation, the DOL has communicated and discussed strategy with plaintiffs' counsel, and fur-

---

**3.** The conditions proposed by the DOL and adopted by the District Court for the Northern District of West Virginia closely follow those ordered by this Court over two years ago in this case. *See NAACP, Jefferson County Branch v. Donovan*, Civ. No. 82–2315 (D.D.C. Sept. 8, 1983) (order suspending effective date of proposed amended rule).

**4.** Some results were unavoidable once the district court allowed the growers to pay the forty-one cents per box piece rate. For example, the lower piece rate has the effect of depressing wages for other farmworkers in the region.

ther, the DOL still has the opportunity to litigate this case on the merits, which it has assured the Court it will do vigorously. These actions, in this particular situation, where the DOL is faced with irreconcilable orders from two federal district courts, are convincing proof that the DOL has made good faith efforts to comply with this Court's Orders.

While a good faith analysis requires a close inquiry into the defendants actions, it is not the Court's role to examine every tactical decision made by the DOL in the current litigation. Such an inquiry would be likely to lead to a court's substituting its judgment, in hindsight, for that of the attorneys. While the plaintiffs and the Court may disagree with some of the DOL's decisions in this litigation, the record, when considered as a whole, reflects a good faith effort on the part of the DOL to comply with the letter and spirit of the *NAACP II* order. Therefore, the Court exercises its discretion and finds that the DOL is not in contempt of that Order.

▉ For these reasons, the Court must deny the plaintiffs' Application for an Order to Show Cause against the DOL. In so doing, the Court is aware of the plaintiffs' concern that without the threat of sanctions, the DOL will not offer a zealous defense at the upcoming hearing on the merits. While the Court believes that the DOL will vigorously argue its case, it will allow the plaintiffs to reopen the contempt issue should evidence showing the DOL's lack of good faith arise.[5]

*The Court has the legal authority to issue an order to show cause against certain nonparty West Virginia growers, but practical considerations and principles of comity override bringing the parties before it at this time.*

The Court finds itself on a path traveled once before. Two years ago, apple grow-

ers in the Western District of Virginia filed a suit similar to the one currently before the District Court for the Northern District of West Virginia. In the previous case, the Virginia district court issued a TRO and scheduled the matter to be heard on its merits. This Court, upon application by the plaintiffs, entered a show cause order requiring the growers to appear and show cause why they should not be enjoined from further prosecuting their action in Virginia or litigating other actions inconsistent with this Court's rulings. Subsequently, this Court, with counsel for the plaintiffs and the government concurring, ordered the growers to terminate their litigation in the Western District of Virginia. The DOL's publication of an amended regulation in September 1983 and the subsequent litigation relating to this Court's Order suspending the amendment rendered the issue moot.

▉ Plaintiffs now seek to have the Court enter an order against the Tri-County and Mount Level, which would require them to show cause why they should not pay all workers a minimum piece rate of fifty-two cents per box of apples picked,[6] and further, be enjoined from prosecuting their cause of action in the West Virginia district court. While the Court agrees with plaintiffs that it has the authority to issue the requested order to show cause, practical considerations and principles of comity give this Court reasons to deny the plaintiffs' application at this time.

Under the All Writs Act, 28 U.S.C. § 1651(a) (1976), the Court "*may* issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." *Id.* (emphasis added). Thus, it is within this

---

5. The Court wishes to make it clear to both parties that any further good faith reviews will not be based upon the results reached in West Virginia. Whether or not a party prevails on the merits is not, by itself, an accurate measure of a party's good faith efforts in litigation.

6. The plaintiffs also ask the Court to order the growers to pay the difference between any wages already paid and the fifty-two cent per box piece rate. Plaintiffs' Suggested Order to Show Cause, *NAACP, Jefferson County Branch v. Brock,* Civ. No. 82–2315 (D.D.C. filed Sept. 10, 1985).

Court's inherent discretionary power to issue the order that plaintiffs have requested. *Cf. SEC v. G.C. George Securities, Inc.*, 637 F.2d 685, 687 (9th Cir.1981). Two pertinent questions the Court must consider in deciding whether to issue the order are whether it can subject the growers, as nonparties to the litigation that was before it, to the injunction requested by plaintiffs and whether the Court has personal jurisdiction over them. In short, the answer to both questions is "yes."

The case law provides support for this Court's interpretation that the All Writs Act grants the district courts the power to issue injunctions against certain nonparties. The Supreme Court in *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823 (1979), held that the nonparty defendant-fishing associations were subject to an injunction the federal district court had issued to protect a series of its orders. *Id.* at 692 n. 32, 99 S.Ct. at 3078 n. 32. In *United States v. Hall*, 472 F.2d 261 (5th Cir.1972), which the Supreme Court approvingly cited in *Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n*, the Fifth Circuit upheld a district court's injunction against third parties preventing them from causing and abetting racial unrest in certain Jacksonville public schools which the court had ordered desegregated. Finally, this Circuit, in *Environmental Defense Fund v. EPA*, 485 F.2d 780 (D.C.Cir.1973), issued an injunction preventing nonparty intervenors in an action before the federal district court for the Northern District of Mississippi from further prosecuting that suit because the issue was properly before Court of Appeals. While none of these cases are wholly on point with the one currently before the Court, they do support the proposition that the Court can use its inherent powers to protect its final decrees, especially when the nonparty's actions threaten the adjudicated public rights of a party to the litigation. Without a doubt, Tri-County and Mount Level's refusal to pay the fifty-two cent piece rate to its migrant farm workers is a direct violation of their rights as adjudicated by this Court. Thus, it is within this Court's discretion to order them to appear before it and, if need be, enjoin their activities.

The issue of the Court's personal jurisdiction over the nonparties was raised by the growers in 1983 when this Court issued show cause orders. As it was then, the law, today, is clear. Under Fed.R.Civ.P. 4(f) and Fed.R.Civ.P. 71, the nonparties can be served if they are within 100 miles of this courthouse. Plaintiffs' counsel represents to the Court that both growers are within that range. If they are not, jurisdiction is still proper under the precedent established by the Court of Appeals in *Environmental Defense Fund v. EPA*, 485 F.2d 780 (D.C.Cir.1973), where, as was previously noted, nonparties in federal district court in Mississippi were enjoined from further prosecution by the Court of Appeals for the District of Columbia.

Despite this Court's inherent power to grant relief against the West Virginia growers, principles of comity and practical considerations advise against such steps. The Court of Appeals for this circuit has stated, "Considerations of comity and orderly administration of justice dictate that two courts of equal authority should not hear the same case simultaneously." *WMATA v. Ragonese*, 617 F.2d 828, 830 (D.C.Cir.1980). This reasoning is relevant to the present case in two respects. First, since a final judgment has been entered in the case before this Court, there is no simultaneous litigation in two co-equal tribunals. Furthermore, the case in West Virginia is not the same one as was before this Court. Second, bringing the apple growers, plaintiffs in the West Virginia litigation, before this Court and possibly entering an injunctive order against them would seem to violate the spirit of the Court of Appeals' reasoning in *Ragonese*. In essence, the growers would be asked to litigate in two federal courts simultaneously with the possible result that one court would enjoin them from continuing to litigate in the other. This puzzling situation would not be in the interests of the orderly

administration of justice, and such use of the Court's powers should be reserved for extraordinary circumstances. *See Bergh v. Washington*, 535 F.2d 505, 507 (9th Cir.), *cert. denied*, 429 U.S. 921, 97 S.Ct. 318, 30 L.Ed.2d 288 (1976).

The Court is mindful of the fact that a hearing on the merits before the district court in West Virginia is scheduled for this week. Moreover, that court has indicated to DOL's counsel that it anticipates resolving the matter by mid-October.[7] Given the realities of this schedule, the Court believes that its further involvement at this time would only serve to delay the fulfillment of the parties' rights. Because comity interests are advanced when "courts of coordinate ranks are respectful of each other's orders, as well as careful to avoid hindering each other's proceedings," *Schauss v. Metals Depository Corp.*, 757 F.2d 649, 654 (5th Cir.1985), this Court exercises its discretion and denies plaintiffs' application for a show cause order against the West Virginia apple growers.

### ORDER

The Court has before it plaintiffs' application for two Orders to Show Cause. For the reasons explained in the accompanying Opinion, the Court finds that the Department of Labor has made good faith efforts to comply with this Court's Order in *NAACP II* dated June 28, 1983. The Court further finds that while it has the authority to bring the nonparty West Virginia growers, Tri-County and Mount Level, before it and order then to show cause why they should not be directed to raise their piece rates immediately to fifty-two cents per box, and further, enjoined from prosecuting their causes of action in the Northern District of West Virginia, it is in the interests of comity and justice for all the parties involved that it deny the plaintiffs' application for this Order to Show Cause.

Accordingly, it is, by the Court, this 10th day of October, 1985, hereby

ORDERED that the plaintiffs' Application for two Orders to Show Cause be denied.

---

7. These dates were communicated to the Court by counsel for DOL during a hearing on this