**AMERICAN RIVERS, et al., Plaintiffs,**

**v.**

**UNITED STATES ARMY CORPS OF ENGINEERS, et al., Defendants.**

**No. CIV.03–241 GK.**

United States District Court, District of Columbia.

July 22, 2003.

**64**

David A. Becker, Esq., David John Hayes, Esq., Janice M. Schneider, Esq., Julia A. Hatcher, Esq., Latham & Watkins, Washington.

Timothy D. Searchinger, Esq., Environment Defense, Washington.

Fred Russell Disheroon, Esq., U.S. Department of Justice, Environment and Natural Resource Division, Washington.

James A. Maysonett, Esq., U.S. Department of Justice, Environment & Natural Resources Division, Washington.

Charles M. Carvell, Esq., ND Office of Attorney General, Bismarck, ND.

Joseph P. Bindbeutel, William J. Bryan, Shannon L. Haney, Missouri Attorney General's Office, Jefferson City, MO.

David D. Cookson, Attorney General's Office, Lincoln, NE.

### MEMORANDUM OPINION

KESSLER, District Judge.

On July 12, 2003, this Court granted Plaintiffs' Motion for Preliminary Injunction, which sought, in part, to enjoin the United States Army Corps of Engineers ("Corps") and the Secretary of the Army (collectively, "Federal Defendants") from operating the extensive dam and reservoir system on the Missouri River in a manner that would adversely impact three species protected by the Endangered Species Act ('ESA'), 16 U.S.C. §§ 1531, *et seq.* The Court's July 12 Order enjoined the Federal Defendants "from implementing the summer water flow provisions of the revised 2003 Annual Operat[ing] Plan ['AOP'], from taking any action that would implement or be consistent with the provisions relating to summer water flow contained in the 2003 Supplemental Biological Opinion ['BiOp'], and from taking any action that would be inconsistent with the provisions relating to summer water flow contained in the 2000 Biological Opinion." July 12, 2003 Order at 2.

On July 14, 2003, the Federal Defendants filed a Motion for Stay of the July 12, 2003 Order Pending Appeal Or, In the Alternative, Temporary Stay of Fourteen Days. On July 15, 2003, the Court denied the request for stay,[1] and the Federal Defendants and the State of Nebraska immediately moved to for a stay pending appeal with the Court of Appeals for the District of Columbia Circuit. Our Court of Appeals denied the Motions to Stay on the

---

1. The Court's July 15 Order also denied the State of Nebraska's Emergency Motion For Stay of Preliminary Injunction Pending Resolution on Appeal.

afternoon of July 18, 2003, stating that the Defendants had "not satisfied the stringent standards required for a stay pending appeal." *American Rivers, et al., v. U.S. Army Corps of Engineers, et al.,* No. 03–5177, slip op. at 1 (D.C.Cir. July 18, 2003) (*citing Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977); *D.C. Circuit Handbook of Practice and Internal Procedures* 33 (2002)).

This matter is now before the Court on Plaintiffs' Motion for an Order to Show Cause Why Defendant The U.S. Army Corps of Engineers Should Not Be Held in Contempt and Sanctioned, filed July 18, 2003. A hearing was held in this matter on July 21, 2003. Upon consideration of the Motion, the Opposition filed on July 20, 2003, the arguments presented at the hearing, and the entire record herein, for the reasons discussed below, Plaintiffs' Motion is **granted.**

## I. Standard of Review

There is "no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States,* 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); *see also SEC v. Diversified Growth Corp.,* 595 F.Supp. 1159, 1170 (D.D.C.1984) (to coerce obedience of a lawful order is within the court's civil contempt power). Civil contempt is a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as a result of noncompliance. *NLRB v. Blevins Popcorn, Co.,* 659 F.2d 1173, 1184 (D.C.Cir.1981).

The principal purpose of civil contempt is vindication of judicial authority. *Id.,* 659 F.2d at 1185 n. 73 (*citing Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). A civil contempt proceeding is a three stage process in which: 1) a court must issue an order directing a party to take or not take certain action; 2) if there is disobedience of that order, the court must issue a conditional order finding the recalcitrant party in contempt and threatening to impose a specified penalty unless the recalcitrant party complies with prescribed conditions set forth in a "purgation order;" and 3) execution of the threatened penalty if the conditions are not fulfilled. *Id.* at 1184. In a proceeding for civil contempt, the moving party has the burden of proving by clear and convincing evidence that the court's order has been violated. *Id.* at 1183. In finding a party to be in civil contempt of a court's order, "the intent of the recalcitrant party is irrelevant," and the court must only determine whether its order has been violated. *Id.* at 1184, 1186 n. 77.

## II. Analysis

### A. The Corps Has Not Complied with the Court's Order of July 12, 2003.

With regard to the first stage in a civil contempt proceeding, this Court's Order of July 12 enjoined the Corps from implementing the summer water flow provisions contained in either the revised 2003 AOP or the 2003 Supplemental BiOp. The revised 2003 AOP and 2003 Supplemental BiOp allowed the Corps to implement summer water flow releases of 26 Kcfs (thousand cubic feet of water per second) or higher "to meet downstream flow targets" to support navigation. 2003 Supplemental BiOp at 5. The Court's July 12 Order also enjoined the Corps from taking any action inconsistent with the summer water flow provisions contained in the 2000 BiOp. The 2000 BiOp spelled out that in order to avoid jeopardy to the protected species under Section 7 of the ESA and to avoid violating the takings provision of Section 9 of the ESA, the Corps would have to im-

plement low summer flows of not more than 25 Kcfs from June 21 to July 15, flows of not more than 21 Kcfs from July 15 to August 15, and flows of not more than 25 Kcfs from August 15 to September 1.2000 BiOp at 242–43.

Consequently, in order to avoid jeopardy to the protected species and to avoid violation of the takings provision of Section 9 of the ESA, the Court's July 12 Order enjoined the Corps from implementing any flow regime not in compliance with the low summer flows contained in the 2000 BiOp, including the high navigation-dependent flow releases provided in the 2003 AOP and 2003 Supplemental BiOp. In fact, the Corps immediately recognized that its obligation under the Order was to reduce water flow on the Missouri River, as evidenced by its press release of July 15, 2003. *See* U.S. Army Corps of·Engineers News Release No. PA–03–18, 3 (2003) at *http://www.hq.usace.army.mil/cepa/releases/MoRiver.htm* ("July 15 News Release") (stating that this Court's Order "prohibits the Corps from implementing the summer flows set forth in the 2003[AOP] and 2003 Supplemental [BiOp]").

With regard to the disobedience finding in the second stage of a civil contempt proceeding, there can be no question that the Corps is in violation of the Court's July 12 Order.[2] Since July 15, 2003, the Corps has not decreased water flow from the Gavins Point Dam below 25 Kcfs. *See* Ex.

1 and 2 to Pls.' Becker Decl. (daily flow data released by the Corps). In fact, on July 15, 2003, the Corps issued a news release, boldly admitting that "the Corps plans to continue operating under the 2003 Supplemental Biological Opinion," rather than comply with this Court's Order of July 12, 2003. July 15 News Release at 3.

**B. It Is Not Impossible for the Corps to Comply with the Court's July 12 Order, and It Has Not Made a Good Faith Effort to Do So.**

Even though the Corps is in clear violation of the Court's July 12 Order, the Federal Defendants still argue that a contempt order should not be issued. Their primary argument is that while they have made a good faith effort to comply with the Court's Order, it is impossible to do so given a conflicting injunction issued by the District Court of Nebraska regarding the Corps' management of the Missouri River Basin.

 While impossibility is a defense to contempt, *S.E.C. v. Ormont Drug & Chemical Co., Inc.*, 739 F.2d 654, 656 (D.C.Cir.1984), impossibility exists only when a party demonstrates that it is "powerless to comply" with a court's order, *Natural Resources Defense Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C.Cir.1974). In this case, the Corps is not powerless to comply with the Court's Order; it is per-

---

**2.** Federal Defendants argue that they cannot be in violation of the Court's July 12 Order because that Order violates Fed.R.Civ.P. 65(d) by including injunctive relief that references other documents—the 2000 BiOp, 2003 Supplemental BiOp, and the revised 2003 AOP. However, Rule 65(d)'s prohibition on reference to other documents is "designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood." *Schmidt v. Lessard*, 414 U.S. 473,

476, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974) (internal citations omitted). In this case, there is no doubt that the Court's Order gave the Federal Defendants explicit notice of the conduct the Corps was expected to perform, and it is undisputed that the Corps itself understood its obligations under the July 12 Order. *See* discussion, *supra*, and July 15 News Release at 3. Thus, the reference in the July 12 Order to other documents does not shield the Federal Defendants from a finding that they are in violation of that Order.

fectly free to lower water releases on the Missouri River. Instead, it has made a deliberate choice to disobey this Court's injunction entered on July 12, 2003, and to obey the injunction issued over a year ago by the District Court of Nebraska. Thus, the fact that the Corps and the Secretary of the Army can choose how to manage the Missouri River "precludes this Court from finding that they were powerless to comply" with the July 12 Order. *NAACP v. Brock,* 619 F.Supp. 846, 850 (D.D.C.1985).

### 1. The Nebraska Injunction Proceedings Did Not Focus on the Corps' ESA Obligations.

In response to severe drought conditions that the Missouri River Basin has been experiencing for the past few years, a series of cases was filed in the courts of the Eighth Circuit during the 2002 water year, challenging the Corps' operation of the Main Stem System under the Flood Control Act of 1944 ("FCA"), 33 U.S.C. §§ 701, *et seq,* and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701, *et seq. See, generally, South Dakota v. Ubbelohde,* 330 F.3d 1014, 1020–22 (8th Cir.2003).

Although "reluctant to interfere" with the Corps' discretion in managing the Missouri River, the District Court in Nebraska "recognize[d] that court orders in other jurisdictions designed to safeguard interests of upstream water users [were] quickly stripping the Corps of Engineers of its ability to function as an objective steward of the water flows of the Missouri River Basin." *Nebraska v. Ubbelohde,* Case No. 8–02CV217, slip op. at 5 (D.Neb. May 13, 2002). The court then entered an injunction ordering the Corps to operate the dams and reservoirs of the Missouri River Basin "in accordance with the 1979 Master Manual and current Annual Operating Plan" and "to maintain minimum navigation flows...as identified in the 1979 Mas-

ter Manual and current Annual Operating Plan." *Id.* at 6. While the Nebraska District Court acknowledged that the Corps' flow management could be affected by the presence of ESA-protected species on the Missouri River, *see id.* at 3–4, its injunction did not reference the ESA.

On June 4, 2003, the Court of Appeals for the Eighth Circuit upheld the Nebraska injunction. The court found that because the Master Manual was binding on the Corps, the Corps could be ordered to "abide by its own formally adopted policies" in the Master Manual requiring it to manage the River to maintain downstream navigation. *South Dakota v. Ubbelohde,* 330 F.3d at 1033. The Endangered Species Act was never considered, nor even mentioned, in the Eighth Circuit opinion.

### 2. The Corps' Did Not Make a Good Faith Effort to Comply with the Court's July 12 Order.

The Federal Defendants argue that they should be excused from a finding of contempt because they have made a good faith effort to comply with the July 12 Order but have been unable to due to a conflict with the injunction issued by the Nebraska District Court. Regardless of whether the Court finds a direct conflict between the injunctions, the existence of a conflict is not a complete defense to contempt, but rather only one factor to be considered in evaluating a party's good faith efforts to comply with a court order. Such good faith efforts to comply are, at best, mitigating factors to be considered when weighing the imposition of contempt sanctions. *NAACP v. Brock,* 619 F.Supp. at 850.

In determining whether a party has acted in good faith to comply with a court's order, the court must balance the violating party's rights with the need to prevent that party from "flouting the law."

*Maggio v. Zeitz*, 333 U.S. 56, 77, 68 S.Ct. 401, 92 L.Ed. 476 (1948). Accordingly, "'some attempts' at compliance are not enough to pass the close scrutiny of the alleged contemnor's claims." *NAACP v. Brock*, 619 F.Supp. at 850 (*quoting SEC v. Ormont Drug & Chem. Co.*, 739 F.2d 654, 656 (D.C.Cir.1984)).

 In this case, the Corps has failed to act in a timely fashion with regard to the Court's July 12 Order, especially given the narrow time-frame in which the low flows must be implemented in order to prevent harm to the ESA-protected species. The Corps argues that its timely filing of motions to stay the July 12 Order in both this Court and our Court of Appeals represents a good faith effort to comply with this Court's Order. Nonsense—the Corps' actions demonstrate the exact opposite. Moving to stay an order does not represent a good faith effort to comply with that order; rather, it represents an effort to *postpone* compliance with that order in the hope that it will be overturned on appeal.

Moreover, while the Federal Defendants did request that the Nebraska District Court amend its injunction, these efforts were not made until eight days after issuance of this Court's Order and *only* after our Court of Appeals denied their motion to stay. Not only could the Federal Defendants have brought this Court's injunction to the attention of the Nebraska court eight days earlier, the Federal Defendants had ample time to request clarification of any ambiguities regarding the scope of the Nebraska injunction long before the Court issued its order on July 12, 2003.[3]

Determining whether a conflict exists between this Court's injunction and the injunction issued by the Nebraska court requires a close examination of the Nebraska injunction's two substantive provisions. Paragraphs two and three of the Nebraska injunction require the Corps to manage the Missouri River in compliance with the Master Manual and the "current" AOP; paragraph three specifically requires the Corps to maintain minimum navigation flows in accordance with those documents. Plaintiffs make a strong argument that the Nebraska District Court must have intended to limit its injunction to the 2002 "current" AOP because to do otherwise would perpetually bind the Corps to a specific flow regime regardless of changes to the Master Manual, changes to the AOP, issuance of updated Biological Opinions, or subsequent court orders.

Because this Court's analysis in issuing the Preliminary Injunction found that the Master Manual provided the Corps with the discretion necessary to impose obligations under the ESA, this Court's injunction does not necessarily conflict with the District Court of Nebraska Order that the Corps comply with the Master Manual. However, to the extent that the injunction issued by the District Court of Nebraska requires the Corps to *always* maintain minimum navigation flows, while this Court's injunction requires flows below navigation levels, a conflict may exist.

In this case, the Corps has made a choice between complying with the Nebraska injunction based upon the Corps' FCA obligations and this Court's July 12 Order based upon the Corps' ESA obli-

---

3. Federal Defendants incorrectly argue that their previously denied Motion to Transfer represents a good faith effort to comply with this Court's Order by seeking to avoid conflicting injunctions. The Motion to Transfer was filed months before this Court's injunction was issued and, at best, represents an effort at forum-shopping to avoid having this Court rule on the merits of this case.

gations.[4] In enacting the FCA, Congress "provided the Corps with a wide array of interests to consider in regulating the River", including protection of wildlife. *South Dakota v. Ubbelohde,* 330 F.3d at 1020. The Supreme Court has concluded that Congress spoke in the "plainest of words" in enacting the ESA, "affording endangered species the highest of priorities." *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). Thus, the Corps' deliberate choice to give a navigation-based injunction priority over an endangered species-protecting injunction hardly represents a good faith effort to comply with its federally mandated obligations.

The Court finds that it is not impossible for the Corps to comply with the July 12 Order and that the Corps has not made a good faith effort to comply with, instead of to delay and avoid, that Order. Accordingly, the Court conditionally finds, in accordance with the three stage procedure mandated in *Blevins,* 659 F.2d at 1184, that the Corps and the Secretary of the Army are in contempt of this Court's July 12 Order.

### B. Imposition of Fines Is Appropriate to Coerce Compliance with the Court's July 12, 2003 Order.

With regard to the threatened imposition of specified penalties in the second stage of a civil contempt proceeding, the Federal Defendants argue that the monetary contempt remedies sought by Plaintiffs are inappropriate because the Corps has not waived its sovereign immunity with regard to such fines. While it is true that courts have ruled that the govern-ment has not waived its sovereign immunity with regard to compensatory fines for contempt, *see Coleman v. Espy* 986 F.2d 1184 (8th Cir.1993), Plaintiffs in this case are seeking coercive, rather than compensatory, fines.

In *Armstrong v. Executive Office of the President,* a court in this District held that the sovereign immunity doctrine is "inapplicable to the imposition of coercive fines." *Id.,* 821 F.Supp. 761, 773 (D.D.C. 1993), *rev'd on other grounds* 1 F.3d 1274 (D.C.Cir.1993); *see also In re Sealed Case No. 99–3091,* 192 F.3d 995, 1000 n. 6 (D.C.Cir.1999) (citing, with approval, *Armstrong's* holding that under the APA, courts may impose coercive fines in civil contempt proceedings against the U.S. government). In addition, other circuits have found the imposition of coercive fines on government entities to be appropriate. *See Fortin v. Commissioner of Massachusetts Dept. of Public Welfare,* 692 F.2d 790, 797 (1st Cir.1982) (affirming finding that state governments' sovereign immunity did not bar imposition of remedial or coercive fines for civil contempt).

In this case, the Corps has announced to the public that it will not follow this Court's Order of July 12. Accordingly, the Court finds that imposition of coercive fines against the Corps and the Secretary of the Army "are necessary to ensure that 'the executive branch of government [does not] treat with impunity the valid orders of the judicial branch.'" *Armstrong,* 821 F.Supp. at 773 (*quoting Nelson v. Steiner,* 279 F.2d 944, 948 (7th Cir. 1960)).

4. To the extent that there is a conflict between the injunctions, it does not represent the kind of conflict that has excused non-compliance with court orders. In those cases, the conflicting injunctions were issued under the same statute, whereas here, the ESA was not considered in the District Court of Nebraska's injunction. *See, generally, NAACP v. Brock,* 619 F.Supp. 846 (D.D.C.1985) and *Feller v. Brock,* 802 F.2d 722 (4th Cir.1986) (two conflicting court orders were both issued under the Immigration and Nationality Act).

**70**

Federal court orders are to be obeyed unless and until litigants succeed in having them duly overturned by the appropriate court of appeals. Litigants may not defy court orders because their commands are not to the litigants' liking. If the rule of law is to be upheld, it is essential that the judiciary takes firm action to vindicate its authority and to compel compliance with lawfully issued directives.

## IV. Conclusion

Plaintiffs have shown by clear and convincing evidence that the Corps and the Secretary of the Army are in civil contempt of the Court's Order of July 12, 2003, for failing to reduce water flow on the Missouri River as specified in the controlling 2000 BiOp in order to avoid jeopardy to ESA-protected species. Therefore, Plaintiff's Motion for an Order to Show Cause Why Defendant The U.S. Army Corps of Engineers Should Not Be Held in Contempt and Sanctioned is granted.[5]

In order to purge themselves of this conditional finding of civil contempt, the Corps and the Secretary of the Army shall take the appropriate actions specified in the Court's Order of July 12, 2003—i.e., lower water flow on the Missouri River to not more than 21 Kcfs until August 15 and to not more than 25 Kcfs from August 15 to September 1—no later than 9:00 a.m. EST on Friday, July 25, 2003. The Corps and the Secretary of the Army shall notify the Court of their compliance with the Court's Order by filing a status report no later than 11:00 a.m. EST on Friday, July 25, 2003. If the Corps and the Secretary of the Army fail to come into timely compliance with the Court's July 12 Order, the Court will impose a fine of $500,000 for every day of non-compliance, to be paid into the Registry of the Court. If non-compliance with the July 12 Order continues past July 31, 2003, the Court will consider imposing more draconian contempt remedies upon the Corps and the Secretary of the Army. An appropriate Order will issue with this Opinion.

## ORDER

On July 12, 2003, this Court granted Plaintiffs' Motion for Preliminary Injunction, which sought, in part, to enjoin the United States Army Corps of Engineers ("Corps") and the Secretary of the Army from operating the extensive dam and reservoir system on the Missouri River in a manner that would adversely impact three species protected by the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531, *et seq.* The Court's July 12 Order enjoined the Federal Defendants "from implementing the summer water flow provisions of the revised 2003 Annual Operat[ing] Plan, from taking any action that would implement or be consistent with the provisions relating to summer water flow contained in the 2003 Supplemental Biological Opinion, and from taking any action that would be inconsistent with the provisions relating to summer water flow contained in the 2000 Biological Opinion." July 12, 2003 Order at 2.

This matter is now before the Court on Plaintiffs' Motion for an Order to Show Cause Why Defendant The U.S. Army Corps of Engineers Should Not Be Held in Contempt and Sanctioned. A hearing was held in this matter on July 21, 2003. Upon consideration of the Motion, the Opposition, the arguments presented at the hearing, and the entire record herein, for the

---

**5.** The Court is reserving judgment on Plaintiffs' request for attorneys' fees incurred by virtue of this Motion. It is to be hoped that the parties will be able to resolve that issue between themselves in light of the Court's Opinion and Order.

reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Plaintiffs' Motion for an Order to Show Cause Why Defendant The U.S. Army Corps of Engineers Should Not be Held in Contempt and Sanctioned [# 104] is **granted**; it is further

**ORDERED** that the Corps and the Secretary of the Army are found, conditionally, to be in civil contempt of the Court's Order of July 12, 2003, for failing to reduce water flow on the Missouri River as specified in the controlling 2000 Biological Opinion in order to avoid jeopardy to ESA-protected species; it is further

**ORDERED** that to purge themselves of this conditional finding of civil contempt, the Corps and the Secretary of the Army shall take the appropriate actions specified in the Court's Order of July 12, 2003—i.e., lower water flow on the Missouri River to not more than 21 Kcfs until August 15 and to not more than 25 Kcfs from August 15 to September 1—no later than **9:00 a.m. EST** on **Friday, July 25, 2003;** it is further

**ORDERED** that the Corps and the Secretary of the Army shall notify the Court of their compliance with the Court's Order by filing a status report no later than **11:00 a.m. EST** on **Friday, July 25, 2003;** and it is further

**ORDERED** that failure of the Corps and the Secretary of the Army to come into compliance with the Court's July 12 Order will lead to the imposition of a fine of $500,000 per day of non-compliance, to be paid into the Registry of the Court.